```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
NANCY LAUB,                              :
                                         :
            Plaintiff,                   :    07 Civ. 9781 (JSR)
                                         :
      -v-                                :    MEMORANDUM
                                         :
AETNA LIFE INSURANCE COMPANY, THE        :
DEPOSITORY TRUST & CLEARING              :
CORPORATION, and THE DEPOSITORY TRUST    :
& CLEARING CORPORATION HEALTH PLAN,      :
                                         :
            Defendants.                  :
---------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

Plaintiff Nancy Laub seeks to recover damages from defendants the Depository Trust & Clearing Corporation ("DTCC"), the Depository Trust & Clearing Corporation Health Plan (the "DTCC Plan"), and Aetna Life Insurance Company ("Aetna") under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C § 1001 et seq.  Laub applied to the Court for permission to supplement the administrative record with the rebuttal report of Dr. Leo J. Shea, III, a neuropsychologist, dated February 14, 2008, and also sought permission to have Dr. Shea testify if this case goes to trial.  By Order dated April 8, 2008, the Court granted the application to supplement the record with Dr. Shea's rebuttal report, but held that the request to allow Dr. Shea to testify if this matter goes to trial is not yet ripe for adjudication.  This Memorandum sets forth the reasons for that ruling.

Laub was employed as a computer programmer at DTCC, and received health insurance through the DTCC Plan.  Complaint

("Compl.") ¶¶ 9, 11.  Beginning on April 26, 2006, Laub became disabled as a result of, <u>inter alia</u>, chronic fatigue syndrome.  <u>Id.</u> ¶ 17; Aetna Notice and Proof of Claim for Disability Benefits, Ex. 2 to Letter from Defense Counsel of Feb. 29, 2008 ("Def. Letter"), at LAUB 0123.  Laub began receiving short-term disability benefits, which were to expire 180 days after the onset of her disability, <u>i.e.</u>, on October 23, 2006.  Def. Letter at 2.  That 180-day period was also the "elimination period" for long-term disability ("LTD") benefits; Laub would only be eligible for LTD benefits if she remained disabled after that period expired.  <u>Id.</u>  During that period, Laub's treating physician, Dr. Susan Levine, provided information indicating that Laub would be able to return to work on September 30, 2006.  <u>See</u> Attending Physician Statement, Ex. 2 to Def. Letter, at LAUB 0139; Treatment Notes dated Aug. 3, 2006, Ex. G to Letter from Plaintiff's Counsel of Mar. 7, 2008 ("Pl. Reply Letter"), at LAUB 0136.  Laub applied for LTD benefits in early September.  Ex. 2 to Def. Letter at LAUB 050.

By letter dated October 3, 2006, Aetna denied Laub's claim for LTD benefits, concluding that she was ineligible because, according to the information Aetna possessed, Laub could return to work on September 30, 2006 and this date was before the end of the elimination period.  <u>See</u> Letter from Deb Fitzgerald of Oct. 3, 2006, Ex. E to Letter from Plaintiff's Counsel of Feb. 15, 2008 ("Pl. Letter").  The letter further stated that if Laub remained disabled as of September 30, 2006, she was required to provide Aetna with

additional supporting materials.  Id. at 2.  Laub submitted additional medical records, but Aetna declined to change its decision.  Ex. 2 to Def. Letter at LAUB 0045.

On October 17, 2006, Dr. Levine submitted an additional worksheet revising her prior prognosis and stating that it was "unlikely" that Laub would be able to return to work within "a few months."  Capabilities and Limitations Worksheet, Ex. G to Pl. Reply Letter, at LAUB 0175.  On November 11, 2008, Aetna again denied Laub's claim on the ground that, according to Aetna's notes, Aetna "received insufficient clinical information to support disability beyond 9/30/06."  Ex. 2 to Def. Letter at LAUB 0043.  Aetna informed Laub that she could submit additional information and that she could appeal the decision.  Id.

On November 27, 2006, Dr. Levine submitted a report stating that she had seen Laub on November 14 and that Laub continued to suffer such symptoms as "cognitive dysfunction, including short term memory loss and difficulty concentrating."  Id. at LAUB 0434.  On December 26, 2006, Aetna again denied Laub's claim, informing her only that "[t]he information submitted does not provide objective clinical/exam evidence supporting inability to perform sedentary occupation."  Notice of Total or Partial Rejection of Claim for Disability Benefits, Ex. G to Pl. Reply Letter, at LAUB 0202.

On April 2, 2007, Laub's attorney requested an additional review of the denial of her claim.  Id.  In connection with this appeal, Laub submitted a report by Leo Shea, III, Ph.D., a

3

neuropsychologist.  See Neuropsychological Evaluation, April 25, 2007, Ex. C to Pl. Letter.  This report concluded, among other things, that Laub suffered from neurocognitive weaknesses and compromised functioning that would make it difficult to perform her job.  Id. at B3.  Aetna referred Laub's file to Dr. Elana Mendelssohn for independent review.  See Letter from Douglas A. Burdick of Aug. 14, 2007, Ex. F to Pl. Letter.  Dr. Mendelssohn reported that the file contained "limited information" "from a neuropsychological standpoint" regarding Laub's alleged deficiencies.  Physician Review of Dr. Elana Mendelssohn, Ex. B to Pl. Letter, at 2.  Dr. Mendelssohn concluded that Laub's cognitive performance "do[es] not substantiate clinically significant deficits."  Id. at 3.  In its August 14, 2007 letter, Aetna informed Laub's attorney that Aetna had concluded that the denial was appropriate.  Letter of Aug. 14, 2007, Ex. F to Pl. Letter, at 1.  Laub brought this action on November 5, 2007.

     Whether this Court may in its discretion supplement the administrative record with Dr. Shea's rebuttal report turns in part on the standard that governs the Court's review of Aetna's denial of benefits.  If defendants are correct that the appropriate standard is "arbitrary and capricious," the Court would not have the discretion to supplement the administrative record in the manner Laub has requested.  See Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995).  If, by contrast, the appropriate standard is de novo, the Court may consider additional evidence not before the claims administrator if it finds "good cause" to do so.  DeFelice v. American Int'l Life Assur. Co., 112 F.3d 61, 67 (2d Cir. 1997).

4

"[A] denial of benefits challenged under [ERISA § 502(a)(1)(B)] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). The Second Circuit has explained that "[a] reservation of discretion need not actually use the words 'discretion' or 'deference' to be effective, but it must be clear." Nichols v. Prudential Ins. Co. of America, 406 F.3d 98, 108 (2d Cir. 2005). "Examples of such clear language include authorization to 'resolve all disputes and ambiguities,' or make benefits determinations 'in our judgment.' In general, language that establishes an objective standard does not reserve discretion, while language that establishes a subjective standard does." Id.

The Second Circuit recently provided further clarification as to the type of language in a benefit plan that "conveys sufficient discretion to an administrator to require courts' 'arbitrary and capricious' rather than de novo review of its actions." Krauss v. Oxford Health Plans, Inc., No. 06-343, 2008 U.S. App. LEXIS 4083, at *18 (2d Cir. Feb. 26, 2008). In Krauss, the defendant insurer had denied the plaintiff full reimbursement of a bilateral breast reconstruction surgery and private-duty nursing care. The Court held that two phrases in the documents of the plan under consideration were adequate to convey such discretion. The first stated that the plan "'may adopt reasonable policies, procedures, rules, and interpretations to promote the orderly and efficient administration

5

of" the plan's Supplemental Certificate of Coverage. Id. at *18. The second, which appeared in the section of the plan document describing the plan's standard for determining reimbursement rates, defined a "usual, customary, and reasonable" ("UCR") fee as either "'[t]he amount charged or the amount We [sic] determine to be the reasonable charge, whichever is less.'" Id.  The Court found that the use of the verb "determine" conferred upon the plan "discretionary authority regarding one of the Plan terms here at issue: UCR charges." Id. at *20.  The Court cautioned that the word "determine" might not in every situation confer such authority, but it found that in that case – where the plan document gave the plan the authority to "determine" the charges and also listed sources upon which the plan might rely in making that determination – the plan should be construed to grant sufficient discretion to warrant arbitrary and capricious review. Id. at *20-21.

Here, the DTCC Plan document, in a section entitled "Long Term Disability Coverage," subsection "A Period of Disability," provides that the insured's "period of disability ends" on "[t]he date Aetna finds you are no longer disabled or the date you fail to furnish proof you are disabled," among other possible dates not relevant here. Summary of Coverage, Ex. 1 to Def. Letter, at LAUB 0969 (emphasis added). Defendants contend that, like the verb "determines" in the plan document at issue in Krauss, the verb "finds" here confers on Aetna the subjective authority to determine Laub's entitlement to disability benefits, and that this language therefore is dispositive of the standard-of-review issue. The quoted

6

sentence, however, appears in the section of the plan document devoted to determining when a disability ends – that is, when "Aetna finds you are no longer disabled" – but the procedure for how Aetna determines when an individual is disabled (or not disabled) is described earlier in the document.  In the "Test for Disability" subsection of the "Long Term Disability Coverage" section, the plan document states:

> From the date that you first become disabled . . . you will be deemed to be disabled on any day if:
> you are not able to perform the material duties of your own occupation solely because of: disease or injury; and
> your work earnings are 80% or less or your adjusted predisability earnings.

Summary of Coverage, Ex. 1 to Def. Letter, at LAUB 0968. Accordingly, when the "Period of Disability" section later provides that the period ends on "the date Aetna finds you are no longer disabled," that phrase can only be understood to mean "the date Aetna finds that you are not able to perform the material duties of your own occupation solely because of injury and also finds that your work earnings are 80% or less or your adjusted predisability earnings." Unlike in Krauss, where the insurer's decision whether to adopt a particular policy or benchmark fee was of a discretionary nature, the inquiry here - despite the fact that it is one to which Aetna "finds" the answer - is quintessentially objective.  The appropriate standard of review is therefore de novo.[1]

---

[1] In light of this conclusion, the Court need not address Laub's other arguments as to why the plan document does not confer discretion sufficient to warrant arbitrary and capricious

7

A district court's de novo review of a plan administrator's decision "is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence." DeFelice v. Am. Int'l Life Assur. Co., 112 F.3d 61, 66-67 (2d Cir. 1997). "Good cause" exists, among other instances, where there was a "conflict of interest" in the administrative reviewing body (in that the body was both the claims reviewer and the claims payor - which is true here), along with some other procedural irregularity or deficiency. Locher v. UNUM Life Ins. Co. of Am., 389 F.3d 288, 294-96 (2d Cir. 2004). Examples of such procedural irregularities include: an insurer's lack of "established criteria for determining an appeal," id. at 293; an insurer's "practice of destroying or discarding all records within minutes after hearing an appeal," id.; an insurer's "failure to maintain written procedures" for claim review, id. at 296; and an insurer's failure to state its reason for denying a claim in its notices to a claimant, Juliano v. Health Maintenance Org. of New Jersey, Inc., 221 F.3d 279, 289 (2d Cir. 2000).

Laub claims that good cause for supplementing the record exists here because, among other irregularities, Aetna "sandbagged" her when it denied her appeal based on the report of Dr. Mendelssohn, which Laub had not previously had an opportunity to review or rebut. Pl. Letter at 3. Defendants respond that Dr. Mendelssohn's review was a simply a response to Dr. Shea's newly-submitted report report

---

review. See Pl. Reply Letter at 1-3.

8

and Aetna was not required to give Laub an opportunity to respond to Aetna's own response to the new evidence Laub presented. Def. Letter at 8-9.[2]

The Court agrees with defendants' argument so far as it goes. As the Tenth Circuit explained in Metzger v. Unum Life Ins. Co. of Am., 476 F.3d 1161, 1166 (10th Cir. 2007), because an ERISA regulation requires claims administrators to obtain independent medical review of newly submitted information, "[p]ermitting a claimant to receive and rebut medical opinion reports generated in the course of an administrative appeal - even when those reports contain no new factual information and deny benefits on the same basis as the initial decision - would set up an unnecessary cycle of submission, review, re-submission, and re-review." See also 29

---

[2] Defendants also argue that they could not possibly have "sandbagged" plaintiff because plaintiff did not refer to any cognitive problems preventing her from working until her administrative appeal was taken, so that "Aetna was unaware [that] plaintiff alleged cognitive deficits were part of her claim until it received Dr. Shea's April 15, 2007 report." Def. Letter at 8. This contention, however, is unsupported by the factual record before the Court. The medical materials Laub submitted at the claim stage did indicate cognitive deficits, see Treatment Notes dated Aug. 3, 2006, Ex. G to Pl. Reply Letter, at LAUB 0136, a fact also reflected in Aetna's own notes, see Ex. G to Pl. Reply Letter, at LAUB 0048-0049. See also Capabilities and Limitations Worksheet, Ex. G to Pl. Reply Letter, at LAUB 0178 (stating that Laub "has difficulty reading or writing for prolonged periods due to deficits in concentration and short term memory" and that she "cannot read, interact with others, use a keyboard and talk on the phone for more than a few minutes at a time"). Moreover, Dr. Mendelssohn's report itself recounts the "sporadic reports of . . . cognitive difficulties" that appear in the treatment notes of Dr. Levine. Physician's Review, Ex. B to Pl. Letter, at 2.

9

C.F.R. § 2560.503-1(h)(3)(iii).[3]

Claims administrators, however, are obliged to provide claimants with adequate notice of the deficiencies of their claims, and give the claimants an opportunity to cure the deficiencies. "[W]hen a claim for benefits is denied, written notice must provide 'the specific reason or reasons for the denial'; the 'specific reference to pertinent plan provisions on which the denial is based'; '[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary'; and 'appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.'" Juliano, 221 F.3d at 286 (citing 29 C.F.R. § 2560.503-1(g)); see also Cook v. N.Y. Times Co. Group Long Term Disability Plan, 2004 U.S. Dist. LEXIS 1259, 24-25 (S.D.N.Y. 2004) ("[I]n order to evaluate the adequacy of notice in an internal ERISA appeal, a reviewing court must look first to what information is communicated to the claimant in the denial of the claim or appeal in question, and to what information the claimant submits in response. Then, it must determine whether the subsequent denial of the appeal is consistent with the rationale given in the first denial notice, representing a fair evaluation that the appeal is still insufficient, or whether it impermissibly relies upon

---

[3] Laub cites a decision from the Eighth Circuit reaching an opposite conclusion on similar facts. See Abram v. Cargill, Inc., 395 F.3d 882 (8th Cir. 2005). As the Metzger Court observed, however, Abrams did not address the ERISA regulation requiring independent review, as that regulation came into effect only after the decisions under consideration in Abram.

10

additional factors that were never communicated to the claimant.").

In the instant case, Aetna failed to provide Laub with sufficient detail about the basis of its December 2006 decision to deny her LTD benefits,[4] and based its later denial of her appeal on new deficiencies, identified only in the report of Dr. Mendelssohn, which Laub was never given an opportunity to cure. The form sent to Laub in December 2006, which informed Laub that Aetna had denied Laub's claim in spite of the additional medical information she submitted attesting to her continued inability to work, gave only the following "explanation": "The information submitted does not provide objective clinical/exam evidence supporting inability to perform sedentary occupation." Notice, Ex. G to Pl. Reply Letter, at LAUB 0202. Responding to this letter, Laub submitted, in conjunction with her appeal, the additional report of Dr. Shea, which did provide extensive "clinical/exam evidence" supporting her disability. Aetna nonetheless denied her appeal on the basis of Dr. Mendelssohn's report, which found fault with the conclusions Dr. Shea drew from the results of the battery of examinations he conducted on Laub. See Letter of August 14, 2007, Ex. F to Pl. Letter, at 4. In other words, the December 2006 form identified a deficiency - insufficient clinical/exam information - which Laub cured, only to have her claim denied for new reasons - essentially, that despite documented

---

[4] The Court finds nothing deficient in the initial denial, communicated in a letter dated October 3, 2006, which quite reasonably relied on the information provided by Laub's own physician indicating that Laub would return to work before the conclusion of the LTD elimination period. See Letter from Deb Fitzgerald of Oct. 3, 2006, Ex. E to Pl. Letter.

11

cognitive deficiencies in some areas, Laub's average and, in some cases, superior cognitive functioning in other areas left her not unable to perform her occupation. See id.; Physician Review of Dr. Elana Mendelssohn, Ex. B to Pl. Letter, at 2-3.

The Court does not opine on whether Aetna's denial was supported by the evidence before it, including both Dr. Shea's and Dr. Mendelssohn's reports, as that question is not before the Court at this stage of litigation. Rather, the Court concludes only that, because Laub was not given sufficient notice of and opportunity to respond to the basis for Aetna's denial of her claim, there is "good cause" for the Court to supplement the administrative record with the rebuttal report of Dr. Shea. See Juliano, 221 F.3d at 288-89 (finding that where USH, an insurer, had not told the plaintiffs that they were being denied reimbursement for home care on the grounds that it was not medically necessary, the claimants "cannot be faulted for having failed to provide USH with evidence of medical necessity while they were seeking USH's reconsideration of its denial," and consequently concluding that the district court "acted well within its discretion in admitting additional evidence on" the issue of medical necessity); see also Cook, 2004 U.S. Dist. LEXIS 1259, at *36-37 ("It should be emphasized that the fact that MetLife considered [plaintiff's doctor's] findings insufficient is not the problem. . . . [But] [i]t was not entitled to fail to provide Cook with information on why the evidence she had submitted was found deficient in the first place. . . . The denial of plaintiff's first appeal was based on deficiencies in plaintiff's submissions that had

12

never been communicated to her in MetLife's initial letter, and that she had never been given the opportunity to cure.").[5]

For the foregoing reasons, the Court, by Order dated April 8, 2008, granted plaintiff's application to supplement the record with the rebuttal report of Dr. Shea.[6]

Dated: New York, NY
       April 28, 2008

JED S. RAKOFF, U.S.D.J.

---

[5] The Court finds unpersuasive Laub's claims that other alleged irregularities also could support a finding of good cause. See Pl. Letter at 2 (alleging that the October 3, 2006 letter, which informed Laub that her claim for LTD benefits was denied because she was to return to work before the expiration of the eliminations period, provided Laub insufficient explanation of the denial); id. at 3-4 (alleging, based on findings in other cases by other courts, that Dr. Mendelssohn is a "tainted and unreliable medical record reviewer").

[6] As noted, the Court denied plaintiff's further request to allow Dr. Shea to testify if this matter goes to trial as not yet ripe for adjudication.

13